UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW R. PERRONG**<br>1657 The Fairway #131 Jenkintown, PA 19046<br><br>Plaintiff,<br>vs.<br><br>**CHARLES C. MCAVENEY** Individually and as<br>CEO / President / Principal Member of CMA,<br>520 BEAUMONT CIR<br>WEST CHESTER, PA 19380,<br><br>**CECILIA MCAVENEY,** Individually and as<br>CEO/ President / Principal Member of CMA,<br>520 BEAUMONT CIR<br>WEST CHESTER, PA 19380,<br><br>**DOE CORPORATION 1 D/B/A**<br>**CHUCK MCAVENEY AGENCY ("CMA")**<br>129 N EAGLE RD<br>HAVERTOWN, PA 19083,<br><br>**STATE FARM MUTUAL**<br>**AUTOMOBILE INSURANCE COMPANY**<br>1 State Farm Plaza<br>BLOOMINGTON, IL 61710,<br><br>**ABRA AUTO BODY & GLASS LP**<br>d/b/a CollisionMax<br>1209 ORANGE ST<br>WILMINGTON, DE 19801,<br><br>and<br>DOES 1 through 100, inclusive,<br><br>Defendants. | Civil Action<br>No._____<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Jury Trial Demanded |

Plaintiff ANDREW R. PERRONG brings this action for damages, restitution,

reinstatement, statutory damages, punitive damages, sanctions, interest, court costs, and

1

injunctive relief under rights pursuant to Federal Statute under 47 U.S.C. 227, and 47 C.F.R. 64 ("Federal Question" Jurisdiction) for the *ultra vires* illegal actions and deliberate and knowing tortious activity of DOE CORPORATION 1 D/B/A CHUCK MCAVENEY AGENCY ("CMA"), CECILIA MCAVENEY, Individually and as CEO / President / Principal Member of CMA ("MCAVENEY"), CHARLES C. MCAVENEY, JR. Individually and as CEO / President / Principal Member CMA ("MCAVENEY"), STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM"), ABRA AUTO BODY & GLASS LP ("ABRA"), and Does 1 through 100, inclusive, in negligently and/or willfully contacting Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls"), by utilization of an automatic telephone dialing system ("RoboCalls") and other claims, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq,* and related claims that form part of the same claim or controversy and/or under 28 U.S.C. § 1367(a) ("Supplemental" Jurisdiction). Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.    Introduction

1. Defendant DOE CORPORATION 1 d/b/a Chuck McAveney Agency ("CMA") is a business that does not appear to be incorporated that markets and sells, *inter alia,* State Farm insurance products throughout Eastern Pennsylvania, and is an exclusive agent of State Farm. Its primary business address is 129 N EAGLE RD HAVERTOWN, PA 19083.

2. Plaintiff brings this action to challenge the Companies' practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Companies' and Companies' agents' illegal telephone solicitations by which it markets its products and services, illegal RoboCalls, and failure to maintain a Do-Not-Call policy or list in connection therewith.

3. All of the claims asserted herein arise out of Companies' illegal telephone solicitation

campaign and are a common fact pattern.

## II.     Jurisdiction and Venue

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County, which lies within this judicial district, pursuant to 28 U.S.C. §118. Plaintiff received the phone calls to a 215-area code number, registered in this judicial district. Each of the Defendants has sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent… ; it occurred when the [facsimile] was received."

## III.     Parties

6. Plaintiff ANDREW PERRONG ("Plaintiff") is an individual who received the alleged phone calls on his private telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who may be mailed at 1657 The Fairway #131 Jenkintown, PA 19046.

7. Defendant DOE CORPORATION 1 d/b/a Chuck McAveney Agency ("CMA") is a business that does not appear to be incorporated that markets and sells, *inter alia,* State Farm insurance products throughout Eastern Pennsylvania, and is an exclusive agent of State Farm. Its primary business address is 129 N EAGLE RD HAVERTOWN, PA 19083.

8. Defendant CHARLES C. MCAVENEY JR. ("MCAVENEY") is an adult

individual who is the President / CEO / Principal of CMA. MCAVENEY is an adult individual and citizen of the United States. As the Principal and namesake of the CMA agency, MCAVENEY is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in CMA's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, and nationwide.

9. Defendant CECILIA MCAVENEY ("MCAVENEY") is an adult individual who is the President / CEO / Principal of CMA, along with her husband, defendant CHARLES C. MCAVENEY. MCAVENEY is an adult individual and citizen of the United States. As the Principal and last-namesake of the CMA agency, MCAVENEY is the primary individual who reaps the benefit of the tortious and illegal conduct described herein that is technically carried out only in CMA's name. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, and nationwide.

10. Defendant ABRA AUTO BODY & GLASS LP d/b/a CollisionMax is a corporation incorporated in the State of Delaware that markets and sells, *inter alia,* automobile collision repair services throughout the United States, and which has, upon information and belief, a contract to service vehicles for STATE FARM at negotiated rates with negotiated and shared claims systems. Its address for service of process is 1209 ORANGE ST WILMINGTON, DE 19801.

11. Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("STATE FARM"), is the holding corporation for multiple STATE FARM corporations, including the primary corporation with which CMA transacts business and, upon information and belief, is an exclusive agent and franchisor. STATE FARM also contracts with defendants CMA and ABRA to place calls to customers in violation of the TCPA on STATE FARM's

behalf, using STATE FARM's name. STATE FARM reaps the benefit of the tortious and illegal conduct described herein. Such tortious, or *ultra vires*, conduct exceeds the permissible actions of corporations both in Pennsylvania, Delaware, Illinois, and nationwide. Defendant STATE FARM is vicariously liable for actions of CMA and ABRA under the Apparent Authority and Ratification theories of vicarious liability.

12. Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 100, inclusive, and the nature of their wrongful conduct, and therefore sues these Defendants by such fictitious names. Plaintiff will seek leave of the Court to amend this complaint to allege their true names and capacities when ascertained.

13. At all times herein mentioned, CMA, MCAVENEY, MCAVENEY, ABRA, STATE FARM, and the Doe Defendants, (collectively, "Defendants"), and each of them, were an agent or joint venture of each of the other, and in doing the acts alleged herein, were acting within the scope of such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

14. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in committing the wrongful acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoing complained of each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15. At all times herein mentioned, Defendants conspired by means of mutual

understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

16. The TCPA imposes personal liability on individuals who participate in or commission telemarketing calls.

17. Under the TCPA, an individual such as MCAVENEY or MCAVENEY may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217, the Communications Act of 1934, as amended, of which the TCPA is a part, which reads, *inter alia*: "[T]he act, omission, or failure of any agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

18. When considering individual officer liability, other Courts have agreed that a Corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, e.g*., Jackson v. Five Star Catering, Inc., v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013), which stated that "[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *See also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), stating that "If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."

19. Defendants MCAVENEY and MCAVENEY are personally liable under the

"participation theory" of liability because they are the Principal owners and controlling officers of CMA, knew of Company's violations, and directed employees and/or agents of Company to continue making those violations. Most of the calls transmitted the MCAVENEY name in their caller ID, and the callers identified themselves as calling on behalf of the MCAVENEYS. Furthermore, MCAVENEY and MCAVENEY are personally liable because they are personally responsible for ensuring Company's employees' TCPA compliance.

## IV.     Factual Allegations

20. In or about January 18th, 2018, Plaintiff received the first of multiple "robocall" solicitations by Defendants and/or their agents at Plaintiff's personal telephone, 215-757-0689. Plaintiff had not consented to this solicitation. Plaintiff's telephone number has been on the Federal Do-Not-Call Registry since 2002.

21. The unsolicited telephone call was placed to Plaintiff's personal telephone number and utilized an "automatic telephone dialing system" or "robocall," to transmit a message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

22. Plaintiff pays a fixed amount of money per minute for each incoming and outgoing call on his telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff is therefore charged for each and every call he receives on his phone, including for any calls answered by his voicemail.

23. The first "Robocall" was answered by Plaintiff's voicemail on January 18th, 2018 This call transmitted the caller ID information "McAveney Chuck" <6104464451>. After a short delay, someone named "Rose" from "State Farm" called to remind "Bob" that his policy would go out of force unless payment was received. This call was placed using an Automatic Telephone Dialing System, since there was a delay and machine noise before the message was left, and

because Plaintiff's voicemail clearly identifies himself as "Andrew." Had the call been dialed without the use of an ATDS, a normal person would have recognized the mistake and marked the number as "do not call."

24. Plaintiff has never had State Farm insurance or done any business with the Chuck McAveney Agency or ABRA.

25. Despite this, the onslaught of calls continued. On January 19, Plaintiff received another call from 610-446-4452. During that call, Plaintiff encountered dead air and silence on the line and disconnected the call after 12 seconds. Such "dead air" behavior is characteristic of an automatic dialer. Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will cause dead air on the line.

26. Peculiarly, Plaintiff received a call from "MCAVENEY CHUCK" 610-446-4452 on February 5. During that call, someone named "Rose" from "State Farm" called and left a message to follow up on an insurance claim. This call was placed using an Automatic Telephone Dialing System, since there was a delay and machine noise before the message was left, and because Plaintiff's voicemail clearly identifies himself as "Andrew." Had the call been dialed without the use of an ATDS, a normal person would have recognized the mistake and marked the number as "do not call."

27. Related to this call, Plaintiff received a call two days prior, on February 2, from "800 Service" and caller ID number 833-827-8604. During that call, Plaintiff was told that the caller was calling from defendant ABRA and that State Farm had provided them Plaintiff's information and were looking to get Plaintiff's vehicle in for an estimate. Plaintiff, utterly confused as to why he would be contacted about an automobile accident he was not involved in, hung up. This call

8

was placed using an Automatic Telephone Dialing System, since there was a delay, machine noise, and a "bloop" sound before the agent came onto the line.

28. Despite these obvious errors, Plaintiff continued to get calls from the Chuck Mcaveney Agency, of note, on February 16, 27, and March 12 from the caller IDs 610-446-4451, 610-446-4450, and 610-446-4450, respectively. During these three calls, "Rose" from State Farm called for "Bob" and left messages reminding for renewals on a personal articles policy as well as encouraging an updated alarm system. These calls were placed using an Automatic Telephone Dialing System, since there was a delay and machine noise before the message was left, and because Plaintiff's voicemail clearly identifies himself as "Andrew." Had the call been dialed without the use of an ATDS, a normal person would have recognized the mistake and marked the number as "do not call."

29. The onslaught saga of calls continued on March 20, when Plaintiff received a call from 610-446-4451. During that call, the caller, "Rose" from "State Farm" called asking for "Bob". Plaintiff told the caller that he was not "Bob," that the caller had the wrong number, and to stop calling. "Rose" apologized and hung up. This call was placed using an Automatic Telephone Dialing System, since there was a delay and machine noise before the agent came onto the line. Furthermore, probably due to the tremendous volume of calls placed by defendant MCAVENEY's "boiler room" operation, Plaintiff was not placed on Defendant's do-not-call list. It is evident that neither defendant MCAVENEY nor State Farm can be bothered to place Plaintiff's number on their internal DNC list, nor take TCPA compliance seriously.

30. Despite this clear instruction not to be called, and apparent understanding, just three days later, on March 23, Plaintiff received a call from caller ID "MCAVENEY CHUCK" <6104464451>. "Rose" from "State Farm" called again and wanted Plaintiff to come in to

9

Defendant MCAVENEY'S office for a coverage and policy review and see how Plaintiff could save money with State Farm. Plaintiff stated that he would call back if he was interested. This call was placed using an Automatic Telephone Dialing System, since there was a delay and machine noise before the agent came onto the line.

31. Despite this second clear instruction not to be called, Plaintiff was called another time on April 2 from the caller ID "MCAVENEY CHUCK" <6104464450>. During this call, "Rose" from State Farm called for "Bob" and left a message asking why "Bob" cancelled his policy and encouraged Plaintiff (or "Bob") to send a copy of the new policy so that she could make sure that the coverage was the same and the price was better. This call was placed using an Automatic Telephone Dialing System, since there was a delay and machine noise before the message was left, and because Plaintiff's voicemail clearly identifies himself as "Andrew." Had the call been dialed without the use of an ATDS, a normal person would have recognized the mistake and marked the number as "do not call."

32. Finally, Plaintiff received a final "salvo" call on April 6, from caller ID "MCAVENEY CHUCK" <6104464452>. During that call, "Rose" from "State Farm" called again and wanted Plaintiff to come in to Defendant MCAVENEY'S office for a coverage and policy review and see how Plaintiff could save money with State Farm, but this time asked for "Bob". Plaintiff said he was not "Bob," that Defendants kept calling looking for "Bob," that they had the wrong number, and to stop calling.

33. In total, Plaintiff received 11 calls, 10 from defendants MCAVENEY and CMA, and 1 from defendant ABRA. As described below, State Farm authorized, sanctioned, ratified, and approved of these calls and are therefore liable for them under the principles of vicarious liability and other liability standards.

34. In e-mail conversations with ABRA, Plaintiff did not receive a copy of ABRA's internal do-not-call policy.

35. In e-mail conversations with the Chuck McAveney Agency, Plaintiff did not receive a copy of CMA's internal do-not-call policy. Moreover, Plaintiff did not receive confirmation he was placed on CMA's do-not-call list, and it is evident that Defendant CMA does not maintain such policies or lists.

36. Although in e-mail conversations with Defendants, Defendants deny using an Automatic Telephone Dialing System to contact Plaintiff, Plaintiff alleges, upon information and belief, that Defendants do in fact use an Automatic Telephone Dialing System (ATDS). This is due to the machine noise prior to a party coming onto the calls, the vast amount of different telephone numbers used to contact Plaintiff, in addition to the volume of calls and the inattention and carelessness with which the calls were placed *en masse* to the Plaintiff without regard for the TCPA or requests not to be contacted. Because this is an evidentiary issue, Plaintiff intends to rely on an expert witness and discovery to further demonstrate that Defendants used an ATDS to contact Plaintiff in each of the calls in question. Additionally, Plaintiff notes that the definition of an ATDS is undergoing major regulatory rulemaking as well as new law, which is likely to expand the number of telephone systems and devices that qualify as an ATDS.

37. State Farm is vicariously liable for the calls under the apparent authority standard of vicarious liability as State Farm, upon information and belief, authorizes CMA and ABRA to make calls on State Farm's behalf, and grants both CMA and ABRA (1) access to information and systems, (2) the ability of CMA and ABRA to enter consumer information into shared databases, (3) the right to market State Farm's products and services under the State Farm brand name, and (4) the authority to use the State Farm name and logo in their advertising, promotions,

illegal telemarketing, and Caller name. State Farm is also vicariously liable under the ratification standard of vicarious liability, as State Farm ratified and acquiesced to the activity of CMA and ABRA in making the calls and gave permission to use the State Farm brand name in the calls. State Farm continues to acquiesce to the activity of its agents in violating the TCPA despite clear flagrant disregard of its Agents' violation of the TCPA and knowledge of a common-fact pattern of local PA agents violating the TCPA.

38. Furthermore, State Farm has adopted a nonchalant, careless, and reckless attitude toward TCPA compliance. This is evidenced by the multitude of Federal lawsuits filed against them for TCPA violations, often because they called completely wrong numbers or called numbers without consent, which State Farm often loses when litigated on the merits (*see, among others, Osorio v. State Farm Bank, FSB, 746 F. 3d 1242*, 11th *Cir. 2014)*. State Farm has adopted a complete unwillingness to take Plaintiff's claims seriously as evidenced by poor communications in e-mail, and having the gall to allege, in e-mail conversations, that the calls were not placed using an ATDS. State Farm has also made the patently absurd and baseless claims that Plaintiff did not receive the calls in question and that he is not the subscriber of the telephone number 215-757-0689 and was not the subscriber of the telephone number despite clear evidence to the contrary. To be clear, the calls *were* placed using an ATDS, 215-757-0689 was and is Plaintiff's telephone number, and Plaintiff most certainly received the calls without giving any sort of consent to State Farm or any of the Defendants.

39. Plaintiff received the call on his private telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

40. These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

12

41. Plaintiff did not provide any one, more, or all Defendants, nor any agent of Defendants, prior express written consent, or any other form of consent, express or implied, to cause Plaintiff to receive telephone calls on his personal telephone that utilized an "automatic telephone dialing system" to transmit a message or make calls. Plaintiff had not consented to be contacted by any Defendant.

42. The telephone Sales Calls therefore violated 47 U.S.C. § 227(b)(1)(A), 47 U.S.C. § 227(c)(3)(F), 47 CFR 64.1200(d)(1), 47 CFR 64.1200(d)(3), 47 CFR § 64.1200(a)(1)(iii), 47 CFR § 64.1200(a)(1), and 47 C.F.R. 64.1200(c)(2).

## V.      Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS Call" Prohibition, 47 U.S.C. § 227 et seq.)

43. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

44.  As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

45. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS Call" Prohibition, 47 U.S.C. § 227 et seq.)

46. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

47. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

48.  Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

49. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

50. As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

51.  Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

52. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

53. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

54. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

55. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

56. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

57. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

58. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

59. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

60. As a result of Defendants' and Defendants' agents negligent violations of 47 CFR

64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Eighth Cause of Action
(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

61. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

62. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

**WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**

### VI.   Prayer for Relief

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8;

2. For awards of $1,500 for each knowing/willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing;

Total statutory damages: **$66,000** (Eleven counts each of: "ATDS Call", sales call, failure to put Plaintiff's number on Defendants' Do-Not-Call list, and failure to provide Plaintiff a copy of Defendants' Do-Not-Call policy with treble damages for each.)

4. Punitive damages to punish Defendants for their willful, illegal, and deliberate tortious conduct and to deter others who may otherwise engage in similar willful illegal and deliberate tortious conduct;

5. Prejudgment interest at the maximum legal rate;

6. Costs of suit herein incurred; and

7. All such other and further relief as the Court deems proper.

### VII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: **June 15, 2018**

_____
Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com